[Cite as *Mathers v. Gibson*, 2018-Ohio-1697.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TERRI MATHERS, GUARDIAN OF ROBERT MATHERS, ET AL. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| Plaintiffs-Appellees | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| -vs- | : | |
| | : | |
| RICHARD BRENT GIBSON, ET AL. | : | Case No. 17 CA 25 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Probate Division, Case No. 17-PV-053026

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      April 30, 2018

APPEARANCES:

For Plaintiffs-Appellees

GERALD J. TIBERIO, JR.
37 South 7th Street
Suite 250
Zanesville, OH 43701

For Defendants-Appellants

MARK W. STUBBINS
KYLE S. WITUCKY
59 North Front Street
P.O. Box 488
Zanesville, OH 43702-0488

*Wise, Earle, J.*

{¶ 1}   Defendants-Appellants, Richard Brent Gibson, Tonya R. Marlatt, Richard B. Marlatt, and Ryan Hatmaker, appeal the October 17, 2017 judgment entry of the Court of Common Pleas of Guernsey County, Ohio, Probate Division, granting summary judgment to Plaintiffs-Appellees, Terri Mathers, Guardian of Robert W. Mathers, and Robert W. Mathers.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On August 17, 2000, Robert W. Mathers and Maxine L. Mathers created and executed the Mathers Family Trust as co-trustors for their benefit as co-trustees. The trust was funded by the transfer of real estate into the trust, approximately 123 acres consisting of a house and farm. They both executed powers of attorneys, living wills, and wills, naming each other as their primary agent/beneficiary. Maxine passed away in January 2013. Robert became the sole co-trustor/co-trustee.

{¶ 3}   When the trust was created, appellants Gibson and T. Marlatt, Robert's adult step-grandchildren, were named as co-successor trustees of the trust and co-executors to Robert's will, and were named as alternate attorneys-in-fact and agents for Robert's estate documents.[1]   Appellants R. Marlatt and Hatmaker are remainder beneficiaries of the trust.

{¶ 4}   Appellee discovered Robert was unable to care for himself and his finances were in disarray. On March 22, 2017, appellee filed an application with the probate court to be Robert's guardian (Case No. 17PG052914). On May 3, 2017, appellee was

---

[1]Kenneth R. Gibson was also named as a co-successor trustee, but passed away in May 2008.

appointed as guardian for Robert's person and estate. The aforementioned trust contained a provision that stated in the event a co-trustor was declared a ward of the court, and if income from the trust was insufficient to provide for the proper health, support, and maintenance of the ward, the ward's guardian had the right to invade the trust for the benefit of the ward.

{¶ 5} On July 10, 2017, appellee filed a complaint with the probate court to invade the trust and sell the trust real estate pursuant to R.C. 2127.05 because Robert's monthly expenses exceeded his income from the trust. Appellee named appellants and others not a part of this appeal. At appellee's request, the probate court appointed a guardian ad litem for Robert.

{¶ 6} On August 15, 2017, appellants (excluding T. Marlatt) filed an answer and asserted affirmative defenses, including that appellee was improperly seeking "to thwart the authority of the successor trustee by not allowing them to fulfill their duties."

{¶ 7} On September 15, 2017, appellee filed a motion for judgment on the pleadings and summary judgment, claiming the sale of the trust real estate was necessary because Robert was out of funds to pay his bills, and no one had challenged her authority to sell the real estate or contest its submitted valuation or attempt to remove her as guardian in the guardianship case.

{¶ 8} On October 5, 2017, appellants (excluding T. Marlatt) filed a memorandum in opposition, asserting under the terms of the trust, the co-successor trustees had the sole authority to sell the trust real estate. Appellants requested discovery to determine Robert's care and finances so the co-successor trustees could take appropriate actions under the trust.

{¶ 9}  By judgment entry filed October 17, 2017, the probate court granted summary judgment to appellee and authorized the sale of the entire trust real estate.[2]

{¶ 10} Appellants filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 11} "THE PROBATE COURT ERRED AS A MATTER OF LAW BY GRANTING APPELLEE GUARDIAN'S MOTION FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT AND PERMITTING HER TO SELL THE ENTIRE REAL ESTATE OWNED AND MANAGED BY THE WARD'S TRUST WITHOUT DISCOVERY, AN OPPORTUNITY TO PRESENT EVIDENCE, OR A TRIAL."

II

{¶ 12} "THE PROBATE COURT ERRED AS A MATTER OF LAW BY GRANTING APPELLEE GUARDIAN'S MOTION FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT AND PERMITTING HER TO SELL THE ENTIRE REAL ESTATE WHEN OTHER, LESS RESTRICTIVE ALTERNATIVES WERE AVAILABLE."

---

[2]We note the judgment entry is lacking a file stamp from the clerk's office.  However, the judgment entry is journalized on the docket sheet dated October 17, 2017, and bears the certified record sequence No. 39.  The clerk's December 12, 2017 certification of the record indicates "the foregoing is a true transcript of the Docket and Journal Entries of said Court in the above-entitled cause," and "the papers herewith sent, numbered from 1 to 50 inclusive, are all the original papers and pleadings filed" in the matter.  The sequence number establishes the judgment entry was filed with the clerk for journalization on October 17, 2017.  The parties were aware of the journalization as appellants timely filed their notice of appeal.  Therefore, we accept the October 17, 2017 date as the date the judgment entry was journalized for the record.  *Jeffrey v. Marietta Memorial Hospital,* 10th Dist. Franklin Nos. 11AP-492 and 11AP-502, 2013-Ohio-1055, ¶ 59-62.  The better practice however is to place a file stamp upon the document.

I, II

{¶ 13} In their two assignments of error, appellants claim the probate court erred in granting summary judgment to appellee and permitting the sale of the trust real estate without discovery and an opportunity to present evidence.  Appellants claimed other, less restrictive alternatives were available.  We disagree.

{¶ 14} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

> Civ.R. 56(C)  provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶ 15} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and

evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶ 16} As explained by this court in *Leech v. Schumaker,* 5th Dist. Richland No. 15CA56, 2015-Ohio-4444, ¶ 13:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to

set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 17} Appellee, as duly appointed guardian of Robert's person and estate, filed a complaint on July 10, 2017, to sell the trust real estate pursuant to R.C. 2127.05 which states the following:

Whenever necessary for the education, support, or the payment of the just debts of the ward, or for the discharge of liens on the real property of the ward, whenever the real property of the ward is suffering unavoidable waste, or a better investment of its value can be made, or whenever it appears that a sale of the real property will be for the benefit of the ward or the ward's children, the guardian of the person and estate or of the estate only of a minor, person unable to manage the person's property because of mental illness or deficiency, habitual drunkard, confined person, or other person under disability may commence a civil action in the probate court for authority to sell all or any part of the real property of the ward. If it appears to the advantage of the ward to lay out all or any part of the real property in town lots, application for that authority may also be made in the action.

{¶ 18} In support of her September 15, 2017 motion for judgment on the pleadings and summary judgment, appellee filed an affidavit wherein she averred as Robert's duly appointed guardian, she had "remaining less than $1,400.00 available to pay creditors," the nursing home bill will be due in October, and it was necessary for her to sell the ward's real estate and personal belongings in order to pay his creditors.

{¶ 19} In their October 5, 2017 memorandum in opposition to appellee's motion, appellants (excluding T. Marlatt) argued the co-successor trustees had the authority under the trust to control the real estate. In support, appellants cited to portions of the "Abstract of Trust agreement signed and dated August 17, 2000 and recorded in the Official Records of Guernsey County, Ohio at Book 469, Pages 3117-3119." We note these pages were not included in the underlying record. However, in their appellate brief at 3-4, appellants acknowledge copies of the Trust Agreement and related estate planning documents were filed with the probate court in the guardianship case. Also, pursuant to a December 14, 2017 certification from the clerk, appellants' motion for transmittal of the Trust Agreement and other related estate planning documents from the guardianship case was granted by the probate court and so transmitted to this court for our review.

{¶ 20} In referring to the Abstract of Trust Agreement, appellants emphasized under paragraph 2, "Initial Co-Trustees," Robert and Maxine are co-trustees "to serve until the death, resignation or incompetence of one of them, and the remaining Co-Trustee shall continue to act as sole Trustee." Paragraph 3, "Successor Trustees," names appellants Gibson and T. Marlatt as co-successor trustees in the event Robert and Maxine are removed as co-trustees. Paragraph 6(a) granted the co-trustees and the

co-successive trustees the "power to grant, exchange, lease, sell and convey real and personal property."

{¶ 21} The Abstract of Trust Agreement referenced by appellants also contains the following language at paragraph 16: "The use of this Abstract of Trust Agreement is for convenience only, and the Trust Agreement is solely controlling as to provisions and interpretations, and any conflict between this Abstract and the Trust Agreement shall be decided in favor of the Trust Agreement."

{¶ 22} Appellants argue because Robert was removed as co-trustor by operation of law, appellants Gibson and T. Marlatt slide in and control the real estate of the trust. The gravamen of this case is who controls, the guardian of the ward or the co-successor trustees under the trust?

{¶ 23} Filed contemporaneously with the complaint was a portion of the Trust Agreement, Article II, "Co-Trustors' Rights and Privileges."  Paragraph C under Article II states the following in pertinent part:

> Conservatorship or Guardianship. In the event that either Co-Trustor shall be legally declared a Conservatee or a Ward of the court, and the income from the trust shall be insufficient to provide for the proper health, support and maintenance of such Co-Trustor, the Conservator or Guardian of such Co-Trustor shall have the right, with the approval of the appropriate court, to invade the trust for the benefit of such Co-Trustor to the extent that such Co-Trustor could have invaded the trust had such Co-Trustor not been, at that time, subject to a Conservatorship or Guardianship.

{¶ 24} This paragraph from the Trust Agreement is very clear as to what should occur in the event a co-trustor is legally deemed incompetent and a ward of the court and "the income from the trust shall be insufficient to provide for the proper health, support and maintenance of such Co-Trustor."

{¶ 25} In its judgment entry granting summary judgment to appellee, the probate court noted Article II, paragraph C, as well as R.C. 2127.05, and referred to appellee's affidavit indicating the ward had less than $1,400.00 remaining to pay his bills. The probate court referred to its May 15, 2017 judgment entry in the guardianship case wherein it authorized appellee, as guardian, to pay monthly expenditures for the ward in the amount of $5,145.00. The probate court also noted the July 3, 2017 inventory of the ward's assets filed by appellee in the guardianship case. The probate court determined in reviewing the ward's annual income, his "monthly expenses are more than his monthly income." The probate court found the language of the trust to be "quite clear and unambiguous" and the guardian had the right to invade the trust for the benefit of the ward. The probate court concluded, "[b]ased on the pleadings and motions before the Court the Court can come to but one conclusion and that is that the Plaintiff is entitled to judgment as a matter of law."

{¶ 26} Appellants now argue the probate court ruled without "Appellants having an opportunity to conduct discovery or present evidence." Appellants' Brief at 9. Appellants argue they should have been able to review the records relating to the ward's care and maintenance, review the guardian's expenditures, and explore alternative funding for support of the ward. Appellants' Brief at 11-12. Appellants argue the probate court

"should have determined the income already being received by Appellee Guardian for the Ward; the Ward's current living expenses and needs; and the other assets owned by the Ward which were not part of the Trust Estate before it rule on the Complaint to Sell or Motion for Summary Judgment." Appellants' Brief at 12.

{¶ 27} A review of the probate court's judgment entry as noted above indicates the probate court did consider the ward's income and monthly expenditures relative to the inventory of the ward's assets.

{¶ 28} Appellants filed an answer on August 15, 2017. Appellants did not file any requests for discovery. One month later, on September 15, 2017, appellee filed her motion for judgment on the pleadings and summary judgment with a supporting affidavit. On September 18, 2017, the probate court set the motion for non-oral hearing for October 6, 2017. Again, appellants never filed any requests for discovery, nor requested a continuance to pursue discovery. Instead, appellants filed their opposition memorandum on October 5, 2017, requesting the probate court to deny appellee's motion and conduct a status conference to set discovery deadlines. Appellants did not support their opposition memorandum with any Civ.R. 56 quality materials pursuant to Civ.R. 56(E) and (F). Appellants now cite to the discovery rule, Civ.R. 26(A), but did not avail themselves of the provisions therein in the matter before the probate court. They cannot now argue they were denied the opportunity to conduct discovery and present evidence.

{¶ 29} In addition, appellants now argue rather than sell the entire trust real estate, less restrictive alternative means were available to provide funds for the care and maintenance of the ward. For example, appellants argue the real estate "could have been sold at a private sale, parceled off and sold in part, or mortgaged; or the oil and gas

royalties or mineral interests could have been leased or sold."  Appellants' Brief at 12-13. In support, appellants argue the trustor's intent from the trust agreement should control. The Abstract of Trust Agreement at paragraph 1 specifically expressed Robert and Maxine's desire to establish a revocable trust for their own benefit.  The Trust Agreement at page 4-5 specifically designated Robert and Maxine as "co-trustors" and "co-trustees." It was their intention that they would benefit from the trust real estate during their lifetimes for their own care and maintenance.

{¶ 30} Although the Trust Agreement in Article VII(B) and (F) provided that the trust real estate, in addition to being sold, could be mortgaged, partitioned, subdivided, optioned, leased, or the gas, oil, and mineral royalties could be sold off, appellee, as guardian, was not required to accept these cumbersome alternatives.  Appellee's affidavit established time was of the essence in order to pay the ward's creditors.

{¶ 31} Upon review, we find the probate court did not err in granting summary judgment to appellee.

{¶ 32} Assignments of Error I and II are denied.

{¶ 33} The judgment of the Court of Common Pleas of Guernsey County, Ohio, Probate Division is hereby affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.

EEW/db 416